IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

TOTAL PETROLEUM PUERTO RICO
CORPORATION,

        Plaintiff

            v.                          CIVIL NO. 09-1105 (JP)

TC OIL, CORP.

        Defendant

## OPINION AND ORDER

Before the Court is Plaintiff Total Petroleum Puerto Rico Corporation's ("TPPRC") motion for a preliminary injunction (**No. 2**). Plaintiff TPPRC filed the instant complaint pursuant to the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and the Petroleum Marketing Practices Act, 15 U.S.C. § 2801, *et seq.* ("PMPA"), for Defendant TC Oil, Corp.'s ("TC Oil") alleged violations of the lease, supply and franchise agreements between the parties.

The Court held a preliminary injunction hearing on February 17, 2009. At the hearing, the Court ordered the parties to file briefs in support of their positions on or before February 24, 2009. After considering the arguments set forth at the preliminary injunction hearing and the issues discussed in the parties' briefs (Nos. 17 and 19), the Court hereby **GRANTS** Plaintiff's motion for a preliminary injunction.

CIVIL NO. 09-1105 (JP)          -2-

## I. **INTRODUCTION AND BACKGROUND**

The parties to the instant litigation entered into a franchise relationship on October 23, 2008, which became effective on November 1, 2008. Pursuant to such relationship, the parties executed the following: (1) a Lease Agreement for the lease of a gasoline service station located at 373 San Claudio Avenue, Urb. Sagrado Corazón, Río Piedras Ward, San Juan, Puerto Rico (the "Station"), (2) a Sales and Supply Agreement for said service station, and a Franchise Agreement for a convenience store on the premises of the service station (collectively, the "Agreements").

Said Agreements permitted Defendant TC Oil to operate the Station, including all the equipment located therein, and the convenience store owned by Plaintiff TPPRC, which are the subject of this litigation. Further, the Agreements authorized TC Oil to sell TPPRC's petroleum products under the TPPRC marks. In turn, TC Oil was obligated to pay rent for the use of the Station and the convenience store located therein, as well as any amounts due for the purchase of petroleum products. Further, TC Oil was obligated to operate the Station and the convenience store in an uninterrupted manner.

As agreed by the parties, Plaintiff was to receive payment for the petroleum delivered through electronic transfers directly from TC Oil's bank account. Nevertheless, some transfers were not made by TC Oil's bank, and by December 12, 2008, Defendant was indebted

CIVIL NO. 09-1105 (JP)          -3-

to Plaintiff for over $96,000.00 of petroleum delivered.  Plaintiff notified Defendant of the debt incurred.  Defendant acknowledged the debt and requested to meet with Plaintiff.

As of December 23, 2008, Defendant had accumulated a debt of over $111,000.00.  Defendant ceased operating the Station on December 19, 2008.  The parties met on several occasions to try to resolve the issue.  Defendant rejected Plaintiff's offer to establish a twenty-four month payment plan.  Upon the parties' failure to reach a payment plan agreement and Defendant's failure to pay its debt, Plaintiff terminated the franchise relationship.

However, Defendant allegedly continues to display signs bearing Plaintiff's trademarks, thereby tarnishing Plaintiff's trade name.  Despite repeated demands from Plaintiff, Defendant has refused to surrender the Station, the convenience store, and all equipment necessary for the operation of the business. Accordingly, Plaintiff moves the Court to enter a preliminary injunction to require Defendant to surrender the station, to refrain from using Plaintiff's trademarks, and to comply with the post-termination covenants of the agreements signed by the parties during the pending litigation.

On February 6, 2009, the Court issued an Order (No. 8) granting Plaintiff's motion for a temporary restraining order.  A show cause hearing to address Plaintiff's motion for a preliminary injunction was held on February 17, 2009.  The hearing lasted one day, and no witnesses were presented by either side.

CIVIL NO. 09-1105 (JP)              -4-

## II.  **LEGAL STANDARD FOR A PRELIMINARY INJUNCTION**

The general purpose of injunctive relief is to prevent future acts or omissions of the non-movant that constitute violations of the law or harmful conduct. United States v. Oregon Med. Soc., 343 U.S. 326, 333 (1952). The United States Court of Appeals for the First Circuit has set forth a quadripartite test for trial courts to use when considering whether to grant preliminary injunction requests. Lanier Prof. Serv's, Inc., v. Ricci, 192 F.3d 1 (1st Cir. 1999); Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991). A preliminary injunction is appropriate if: (1) the petitioner has exhibited a likelihood of success on the merits; (2) the petitioner will suffer irreparable injury if the injunction is not granted; (3) such injury outweighs any harm which granting injunctive relief would inflict on the respondent; and (4) the public interest will not be adversely affected by granting the injunction. Narragansett Indian Tribe, 934 F.2d at 5; see, e.g., Aoude v. Mobil Oil Corp., 862 F.2d 890, 892 (1st Cir. 1988); Hypertherm, Inc. v. Precision Products, Inc., 832 F.2d 697, 699 & n.2 (1st Cir. 1987). Whether to issue a preliminary injunction depends on balancing equities where the requisite showing for each of the four factors turns, in part, on the strength of the others. Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 611-13 (1st Cir. 1988).

CIVIL NO. 09-1105 (JP)             -5-

### III. **ANALYSIS**

Before analyzing Plaintiff's motion under the preliminary injunction framework set forth by Narragansett Indian Tribe, *supra*, the Court must briefly address a threshold jurisdictional issue raised by Defendant - that is, the issue of consolidation.

#### A.   **Consolidation**

Defendant has raised the threshold issue of whether this case should have been consolidated with an earlier-filed case, Luis Alfredo Santiago et al. v. Esso Standard Oil Company (Puerto Rico), Civil No. 08-1950 (CCC/JA).  Said lawsuit was filed when Esso Standard Oil Company (Puerto Rico), Inc. ("Esso"), announced its withdrawal from the Puerto Rico market and the termination of its franchise agreements effective September 30, 2008.  TPPRC was announced as the prospective franchisor, and it entered said lawsuit as an Intervenor and Co-Defendant.  Unhappy with Esso's decision, the plaintiffs (mostly non-trial franchisees of Esso, including TC Oil) filed the lawsuit seeking injunctive relief, declaratory judgment, and damages under the PMPA.

Defendant TC Oil argues that the instant action is related to the matter before Judge Arenas, which, *inter alia*, challenges the validity of the Agreements between the parties hereto.  Defendant argues that Plaintiff cannot seek recovery in this case if Agreements between the parties are unenforceable under Puerto Rico law.  At the preliminary injunction hearing, Defendant moved the Court to

CIVIL NO. 09-1105 (JP)            -6-

consolidate the instant action, or, in the alternative, to declare the Agreements illegal.

Consolidation is a procedural device that does not alter the character of separate suits. <u>Gen. Contracting & Trading Co., LLC v. Interpole, Inc.</u> 899 F.2d 109, 113 (1st Cir. 1990). Rule 42(a) of the Federal Rules of Civil Procedure grants courts broad discretion to consolidate cases where there are common questions of law or fact:

> [w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a). <u>See</u> <u>Arroyo v. Chardón</u>, 90 F.R.D. 603, 605 (D.P.R. 1981). The purpose of consolidation is to avoid: (1) overlapping trials containing duplicative proof; (2) excess cost incurred by all parties and the government; (3) the waste of valuable court time in the trial of repetitive claims; and (4) the burden placed on a new judge in gaining familiarity with the cases. <u>Id</u>. at 60. The court must weigh the saving of time and effort that consolidation would produce against any inconvenience, delay, or expense that it would cause. <u>See</u> 9 Charles A. Wright and Arthur R. Miller, <u>Federal Practice and Procedure</u>, § 2383 (1995).

The Court has reviewed Civil No. 08-1950 (CCC/JA) and determines that consolidation is not appropriate in this instance. On October 18, 2008, Judge Arenas entered an Opinion and Order denying Plaintiffs' preliminary and permanent injunction requests and

CIVIL NO. 09-1105 (JP)          -7-

dismissing Plaintiffs' complaint.  The Court found that Esso had complied with the notice requirements under the PMPA, and TPPRC's offering of nondiscriminatory franchise contracts generally complies with Esso's obligation to assure that its franchisee is offered a non-discriminatory contract.  On February 25, 2009, Judge Arenas issued an Order dismissing TPPRC's counterclaim.  Said decision effectively terminated the aforementioned proceedings before Judge Arenas.

The Court agrees with Plaintiff that the issues litigated before Judge Arenas are beyond the scope of the complaint in this case, and finds that they involve separate and distinct legal issues that do not warrant consolidation.  Further, given that the litigation before Judge Arenas has effectively concluded, consolidation of this newly-filed action would not be appropriate.  As such, the Court **DENIES** Defendant's request for consolidation, and will now consider Plaintiff's arguments in support of its motion for a preliminary injunction.

    B.    **Preliminary Injunction Analysis**

Plaintiff moves the Court to enter a preliminary injunction requiring Defendant to surrender the Station, including all the equipment located there, during the pendency of this litigation, and to immediately comply with all post-termination covenants of the agreements between the parties.

CIVIL NO. 09-1105 (JP)          -8-

### 1.  Likelihood of Success on the Merits

The first step in the preliminary injunction analysis requires Plaintiff to exhibit a likelihood of success on the merits of its case. <u>Narragansett Indian Tribe</u>, 934 F.2d at 5. To determine Plaintiff's likelihood of success on the merits, the Court must consider Plaintiff's claims under both the PMPA and the Lanham Act.

### a.  Plaintiff's PMPA Claims

Plaintiff argues that it is likely to prevail on the merits of its PMPA claims because the Agreements between the parties hereto were validly terminated and Defendant has illegally retained possession over the Station, the tanks, and the other equipment, in violation of the post-termination covenants of the aforementioned. Article 102(c)(8) of the PMPA specifically includes "failure by the franchisee to pay the franchisor in a timely manner when due all sums to which the franchisor is legally entitled" as justification for termination of a franchise relationship. 15 U.S.C. § 2802. Although the PMPA ordinarily requires ninety day written notice to the franchisee of a termination or non-renewal, it allows for a lesser period when ninety days is unreasonable under the circumstances. 15 U.S.C. § 2804.

Defendant does not contest that the PMPA was validly terminated; rather, Defendant argues that its failure to comply with the terms and conditions of the Agreements was beyond its reasonable control, and that its failure is attributable to Total's allegedly abusive,

CIVIL NO. 09-1105 (JP)          -9-

oppressive and illegal practices and contract. Defendant further argues that its failure to operate the Station since December 2008 is attributable to Plaintiff.

The Court has considered Defendant's arguments, but finds that Plaintiff's allegations include a valid termination of the Agreements under the PMPA, and the demand for the return of the property and equipment in possession of the Defendant, who continues to use Plaintiff's marks. Defendant is obligated to comply with all of the post-termination obligations under the Agreements. Plaintiff has presented evidence that Defendant has not so complied. Accordingly, the Court finds that Plaintiff has a substantial likelihood of prevailing on the merits of its claims under the PMPA.

### b.  **Plaintiff's Lanham Act Claims**

Plaintiff argues that Defendant has also illegally displayed Plaintiff's marks since the Agreements were terminated, thereby violating Section 43 (c) of the Lanham Act, by diluting Plaintiff's trademarks. Generally speaking, the Lanham Act proscribes the unauthorized use of a service mark when the particular usage causes a likelihood of confusion with respect to the identity of the service provider. International Ass'n of Machinists & Aero. Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 200 (1st Cir. 1996). To prevail on a trademark infringement claim, a plaintiff must establish that: (1) he uses and thereby owns a mark; (2) the defendant is using the same or a similar mark; and (3) the defendant's use is likely to confuse the public, thereby harming the plaintiff. Doral

CIVIL NO. 09-1105 (JP)            -10-

Pharmamedics, Inc. v. Pharm. Generic Developers, Inc., 148 F. Supp. 2d 127, 137 (D.P.R. 2001). The United States Court of Appeals for the First Circuit has held that "the third element of the trademark cause of action, likelihood of confusion, is the central issue in finding trademark infringement." International Ass'n of Machinists and Aerospace Workers, 103 F.3d at 200. This Court has held that a finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears. Jordan K. Rand, Ltd. v. Lazoff Bros., Inc., 537 F. Supp. 587, 597 (D.P.R. 1982).

Defendant TC Oil does not specifically address the likelihood of Plaintiff's success on the merits of its trademark infringement claims, so the Court will not linger long with this issue. Having carefully analyzed the evidence set forth by the parties, the Court finds that Plaintiff is likely to succeed on the merits of its trademark infringement claim, given that Defendant is displaying Plaintiff's marks at a gasoline service station that no longer sells gasoline, thereby confusing consumers and diluting Plaintiff's marks.

### 2. Irreparable Harm

The second element that Plaintiff must demonstrate is that it will suffer irreparable harm if the preliminary injunction is not granted. Narragansett Indian Tribe, 934 F.2d at 5. Plaintiff contends that it will suffer irreparable injury absent an injunction because: (1) Defendant's possession of the Station is damaging the goodwill and reputation of Plaintiff's marks, (2) Defendant is

CIVIL NO. 09-1105 (JP)          -11-

preventing Plaintiff from exercising its constitutional right to use the Station, thereby exposing Plaintiff to civil liability for any environmental contamination that results, and (3) Defendant's actions are jeopardizing the market presence of Plaintiff in the relevant gasoline market.

An injury will only be considered irreparable if no adequate remedy for the injury exists at law. See Foxboro Co. v. Arabian Am. Oil Co., 805 F.2d 34, 36 (1st Cir. 1986). Monetary damages are usually not considered irreparable injuries. See DeNovellis v. Shalala, 135 F.3d 58, 64 (1st Cir. 1998) (holding that a temporary loss of income which may be recovered later does not generally constitute irreparable injury). It is not required that a plaintiff establish that denial of injunctive relief would be fatal to its business; it is sufficient for a plaintiff to show that injury is not accurately measurable, given that irreparable harm is a natural sequel. See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 18 (1st Cir. 1996) (citations omitted). Evaluating irreparable harm and its likelihood of success on the merits must be considered together. Id. The greater the likelihood of success on the merits, the less required showing of irreparable harm. E.E.O.C. v. Astra U.S.A., Inc., 94 F.3d 738, 743 (1st Cir. 1996).

The Court finds that Plaintiff has made an adequate showing that in the absence of a preliminary injunction, it would suffer harm to its reputation and goodwill because of Defendant's unauthorized display of Plaintiff's marks. Further, Defendant's occupation of

CIVIL NO. 09-1105 (JP)          -12-

Plaintiff's property deprives Plaintiff of the ability to use this site, and also to complete the necessary testing and maintenance actions that are required of a gasoline service station.  If Plaintiff cannot access the tanks, pumps and related equipment for testing, Plaintiff may be exposed to liability for environmental law violations.  Therefore, based on the evidence in the record before it, the Court finds that Plaintiff would suffer irreparable harm if a preliminary injunction is not entered.

### 3.    Balance of Hardships

The third element of the test for a preliminary injunction requires Plaintiff to show that the irreparable harm that Plaintiff will suffer in the absence of the entry of a preliminary injunction outweighs any harm which granting injunctive relief would inflict on Defendant.  <u>Narragansett Indian Tribe</u>, 934 F.2d at 5.  Although Defendant may suffer the hardship of ceasing operations until a ruling has been made in this case, the Court notes that Defendant has failed to maintain the Station in working condition since December 19, 2008.  Defendant TC Oil does not have the right to use Plaintiff's property, storage tanks, equipment or trademarks in violation of the terminated franchise agreement.  The real damage to Plaintiff's reputation is great, especially considering Defendant has kept Plaintiff's marks in place while the Station is closed and unattended.  The harm to Plaintiff's reputation will only increase with time in the absence of a preliminary injunction.  Trademark law is designed to "quickly and easily assure[] a potential customer that

CIVIL NO. 09-1105 (JP)          -13-

this item--the item with this mark--is made by the same producer as other similarly marked items that he or she liked (or disliked) in the past." Qualitex Co. v. Jacobson Prods. Co., 514 U.S. 159, 164 (1995). Defendant's actions of failing to operate the Station and failing to comply with its legal obligation to turn the Station over to Plaintiff are harmful to both consumers and Plaintiff.

Plaintiff has presented convincing evidence in relation to the balancing test. Defendant's argument is focused on the consolidation issue, and does not specifically address the balance of harms element. Defendant possesses a gasoline service station which supposedly sells Plaintiff's gasoline, and yet has kept the premises closed and non-operational for nearly three months. For these reasons, the balance of hardships leans in favor of Plaintiff TPPRC.

### 4. Public Interest

The fourth and final element that Plaintiff must demonstrate is that the public interest will not be adversely affected if the Court grants the injunction. Narragansett Indian Tribe, 934 F.2d at 5. Here, the Court finds that the public interest weighs in Plaintiff TPPRC's favor. Not only is Plaintiff's trademark being harmed, but any potential customer who relies on the strength of Plaintiff's trademarks and quality of product is being erroneously induced into purchasing gasoline from Defendant, although Defendant has closed the Station as of this time. Furthermore, the continued possession by a lessee of a property after the lease has been validly terminated is contrary to the public interest, especially in the present case

CIVIL NO. 09-1105 (JP)          -14-

where such possession includes underground gasoline storage tanks. Such tanks require strict testing, record-keeping, and monitoring. Defendant has not demonstrated that it follows the stringent requirements while the Station is closed. The public may be harmed if Defendant retains control over the underground tanks and fails to properly maintain them.

## IV.  CONCLUSION

In conclusion, the Court **GRANTS** Plaintiff's motion for a preliminary injunction.  Defendant is hereby **ORDERED** to: (1) surrender the Station to Plaintiff, including all the equipment located there, if Defendant has not done so already, for the pendency of this litigation, and (2) immediately comply with all post-termination covenants of the agreements between the parties. Defendant **SHALL** answer the complaint **on or before March 26, 2009.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 11th day of March, 2009.

s/Jaime Pieras, Jr.
JAIME PIERAS, JR.
U.S. SENIOR DISTRICT JUDGE