IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| TOTAL PETROLEUM PUERTO RICO CORP., <br><br> Plaintiff <br><br> v. <br><br> TC OIL, CORP., <br><br> Defendant | CIVIL NO. 09-1105 (JP) |

**OPINION AND ORDER**

Before the Court is a motion to dismiss (**No. 61**) filed by Defendant TC Oil, Corp. ("TC"), and Plaintiff Total Petroleum Puerto Rico Corp.'s ("TPPRC") opposition thereto (No. 67). Plaintiff TPPRC filed the instant complaint pursuant to the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Petroleum Marketing Practices Act, 15 U.S.C. § 2801, *et seq.*, and Puerto Rico law, for Defendant's alleged violations of the lease, supply and franchise agreements between the parties.  For the reasons stated herein, Defendant's motion is hereby **DENIED**.

**I.   FACTUAL ALLEGATIONS**

Defendant TC leased from Plaintiff a gasoline service station (the "Station") located at 373 San Claudio Avenue, Urb. Sagrado Corazón, Río Piedras Ward, San Juan, Puerto Rico, which is the subject of this lawsuit.  The parties entered into the Lease Agreement on November 1, 2008, for a period of three years.  The

CIVIL NO. 09-1105 (JP)          -2-

Lease Agreement provides, *inter alia*, that Defendant would pay Plaintiff a monthly rent of $2,000.00 for the Station, that Defendant would use the Station to sell gasoline, and that Defendant would sell only Total branded petroleum products.

On October 23, 2008, the parties entered into a Supply Agreement, thereby granting Defendant the right to buy and resell Total petroleum products and to operate the Station under said trademark.  The Supply Agreement had a duration of three years, beginning on November 1, 2008.  Under the Supply Agreement, Defendant was obligated to buy from Plaintiff a monthly minimum amount of gasoline products of 192,000 gallons and a monthly minimum of 150 gallons of oil and lubricants, the purchase price of which would be paid to Plaintiff on a Cash-On-Delivery basis.  The Commodatum Provisions of the Supply Agreement  allowed Defendant to use the underground storage tanks and other equipment located at the Station and owned by Plaintiff.  Defendant allegedly had an obligation under these Provisions to conduct testing of the equipment to make sure no environmental damage occurred.

Finally, the parties also entered into a Bonjour Franchise Agreement on October 23, 2008, for a period of three years, which entitled Defendant to operate a convenience store at the Station. In exchange, Defendant would pay a monthly minimum rent of $5,000.00 to Plaintiff, or a rent equivalent to ten percent of the store's gross sales.  In order to ensure prompt payments for rent and the

CIVIL NO. 09-1105 (JP)          -3-

purchase of gasoline products, the parties authorized direct payment to Plaintiff through electronic transactions from Defendant's bank.

Defendant allegedly breached its agreements with Plaintiff by failing to pay for gasoline products and rent in the total amount of $113,644.75.  This figure accounts for gasoline deliveries made by Plaintiff on November 18, 2008, November 22, 2008, November 28, 2008 December 1, 2008, December 8, 2008, and December 9, 2008.  On all of these occasions, Defendant's bank returned the debit unpaid.  When questioned about this, Defendant replied that it had no idea why the payments were not approved, since it had sufficient funds in its account. On December 10, 2008, Plaintiff learned from Defendant's bank that Defendant had advised the bank not to pay Plaintiff. Defendant also failed to pay rent for the months of November, December and January.  Plaintiff allegedly offered Defendant a payment plan, which Defendant rejected.

Moreover, Defendant allegedly failed to operate the Station and the convenience store located inside the Station for a period of over seven consecutive days on or around December 19, 2008.  Defendant also allegedly failed to remove Plaintiff's trademarks, thereby damaging Plaintiff's reputation in the industry and causing customer confusion.   On February 4, 2009, Plaintiff sent Defendant a termination notice of the parties' agreements, which was received by Defendant on that same day.  Plaintiff filed the instant lawsuit on February 5, 2009.

CIVIL NO. 09-1105 (JP)          -4-

## II. **LEGAL STANDARD FOR A MOTION TO DISMISS**

According to the Supreme Court, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1969 (2007). As such, in order to survive a motion to dismiss, a complaint must state a claim to relief that is plausible on its face, not merely conceivable. Id. at 1974. The First Circuit has interpreted Twombly as sounding the death knell for the oft-quoted language of Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 94-95 (1st Cir. 2007), quoting Twombly, 127 S. Ct. at 1969. Still, a court must "treat all allegations in the Complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff." Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 997 (1st Cir. 1992).

## III. **ANALYSIS**

Defendant moves the Court to dismiss the complaint on two grounds: (1) Plaintiff is not the owner of the trademark at issue, and therefore lacks standing to prosecute this action, and (2) the complaint should be dismissed for failure to join necessary parties. The Court will now consider Defendant's arguments in turn.

CIVIL NO. 09-1105 (JP)            -5-

## A.   **Trademark Ownership**

Defendant argues that Plaintiff's claims brought under Section 32 of the Lanham Act should be dismissed because Plaintiff is not the owner of the trademark at issue. Section 32(1)(a) of the Lanham Act, which governs claims for infringement of registered marks, states in relevant part that:

> [A]ny person who shall, without the consent of the registrant use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable to the registrant of the mark.

15 U.S.C. § 1114(1)(a); see Doral Pharmamedics, Inc. v. Pharm. Generic Developers, Inc., 148 F. Supp. 2d 127, 137 (D.P.R. 2001). Section 1114(1)(a) of the Lanham Act restricts relief to trademark registrants. See Shell Co. v. Los Frailes Serv. Station, Inc., 596 F. Supp. 2d 193, 203 (D.P.R. 2008) (citing Quabaug Rubber Co. v. Fabiano Shoe Co, Inc., 567 F.2d 154, 159 (1st Cir. 1977)). This Court has held that the term registrant includes assignees, and may include exclusive licensees, but does not include nonexclusive licensees. 15 U.S.C. § 1127; Los Frailes Serv. Station, Inc., 596 F. Supp. 2d at 103 (citations omitted). Further, federal registration of a mark is not an absolute prerequisite to a suit claiming violations of trademark rights under the Lanham Act. Zyla v. Wadsworth, 360 F.3d 243, 251 (1st Cir. 2004) (stating that while

CIVIL NO. 09-1105 (JP)            -6-

much of the Lanham Act deals with the registration, use, and infringement of trademarks, 15 U.S.C. § 1125(a) goes beyond trademark registration protection). The United States Court of Appeals for the First Circuit has held that "anyone who may suffer adverse consequences from a violation of Section 1125(a) has standing to sue regardless of whether he is the registrant of a trademark." Quabaug Rubber Co., 567 F.2d at 160.

Plaintiff argues that Defendant violated the Lanham Act by displaying Plaintiff's trademark when it was not selling Plaintiff's product, thereby creating customer confusion. In support of its opposition, Plaintiff attached to its brief a copy of the trademark at issue in this case, which is registered to Total SA, a French Corporation. No. 67, Ex. 1. Plaintiff also attached the Licensing Agreement between itself and Total SA (the "Agreement"). No. 67, Ex. 2. Said Agreement states that Plaintiff has been a licensee of Total SA's marks since October 1, 2004. The Agreement, dated May 19, 2009, summarizes Plaintiff's right to use the licensed marks that has governed the parties' relationship since their business affiliation commenced. It states that Plaintiff was granted an exclusive license by Total SA, whereby Total SA authorized Plaintiff to use its marks in the Commonwealth of Puerto Rico. The Agreement further endows Plaintiff with the responsibility of instituting and prosecuting any infringement actions against third parties who misuse the Total marks.

CIVIL NO. 09-1105 (JP)         -7-

Based on the aforesaid information, the Court finds that Plaintiff has met its burden of pleading that it has standing to prosecute this lawsuit. Plaintiff has an exclusive license to use Total SA's marks in Puerto Rico, thereby allowing it to seek relief pursuant to the Lanham Act for trademark infringement. See Los Frailes Serv. Station, Inc., 596 F. Supp. 2d at 103. Accordingly, Defendant's motion to dismiss on trademark ownership grounds is hereby **DENIED**.

### B. Indispensable Party

Defendant argues that Total SA must be named as a party to this lawsuit because it is the owner of the trademark at issue. Specifically, Defendant argues that Total SA is a necessary party pursuant to Rule 19 of the Federal Rules of Civil Procedure. Rule 19(a) of the Federal Rules of Civil Procedure sets forth the elements for determining whether a party is necessary or indispensable to a civil action. Rule 19(a) states, in pertinent part, that:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

CIVIL NO. 09-1105 (JP)           -8-

Fed. R. Civ. P. 19(a).  If an individual fits the requirements set forth in Rule 19(a) but joinder is not feasible, a court must take a second step.  It must determine whether "in equity and in good conscience the action should proceed among the parties before it, or should be dismissed."  Fed. R. Civ. P. 19(b); see <u>Cintrón v. San Juan Gas, Inc.</u>, 79 F. Supp. 2d 16, 18 (D.P.R. 1999).  To make this determination, a court considers four factors: (1) to what extent a judgment rendered in an individual's absence might be prejudicial to that individual or to those already named as parties, (2) the extent to which, by the addition of protective provisions in the judgment, by the contouring of relief, or other such measures, the prejudice can be reduced or avoided, (3) whether a judgment rendered in the individual's absence will be adequate, and (4) whether a plaintiff will have an adequate remedy if the lawsuit is dismissed for non-joinder.  Fed. R. Civ. P. 19(b).

    Put simply, when applying Rule 19(a), a court must decide whether considerations of efficiency and fairness, growing out of the particular facts of the case, require that a particular individual be joined as a party.  When applying Rule 19(b), a court will ask whether it is so important to join the individual at issue that, in the person's absence, the suit should not go forward at all.  <u>Pujol v. Shearson/American Express</u>, 877 F.2d 132, 134 (1st Cir. 1989).

    The Court is unaware of any precedent within this jurisdiction that requires the owner of a trademark to join an action for

CIVIL NO. 09-1105 (JP)           -9-

trademark infringement as a necessary party.  Plaintiff has vigorously prosecuted this action thus far, and Defendant has not provided any argument as to how either Total SA or Defendant would be prejudiced by the failure to join Total SA as a party to this suit.  The Court agrees with Plaintiff that because Total SA delegated to Plaintiff the obligation to sue for trademark infringement in the Agreement between the aforesaid parties, Total SA is not a necessary party to the instant litigation. Considering the particular facts in the case at bar, the Court finds that Plaintiff is authorized to bring this action without the presence of Total SA, and thus Defendant's motion to dismiss of the grounds of failure to join an indispensable party is hereby **DENIED.**

### IV. <u>CONCLUSION</u>

In conclusion, Defendant's motion to dismiss is hereby **DENIED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 7th day of July, 2009.

             s/Jaime Pieras, Jr.
              JAIME PIERAS, JR.
            U.S. SENIOR DISTRICT JUDGE